GREENWICH CITIZENS COMMITTEE, INC., et al., Appellants, v COUNTIES OF WARREN AND WASHINGTON INDUSTRIAL DEVELOPMENT AGENCY et al., Respondents. (Case No. 1.)

In the Matter of ROBERT L. SCHULZ, Appellant, v WASHINGTON COUNTY et al., Respondents. (Case No. 2.)

Third Department, December 27, 1990

APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna (Philip H. Gitlen* of counsel), for appellants in case No. 1.

*Robert L. Schulz,* appellant *pro se,* in case No. 2.

*Miller, Mannix & Pratt, P. C. (Benjamin R. Pratt, Jr.,* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

Again we are confronted with challenges to the construction of a solid waste management facility in the Village of Hudson Falls, Washington County. The background of this project can be gleaned from our prior decisions about it *(see, Matter of Village of Hudson Falls v New York State Dept. of Envtl. Conservation,* 158 AD2d 24; *Matter of Schulz v Washington County,* 157 AD2d 948; *Matter of Citizens for Clean Air v New York State Dept. of Envtl. Conservation,* 135 AD2d 256, *lv dismissed, lv denied* 72 NY2d 853; *Matter of Congdon v Washington County,* 130 AD2d 27, *lv denied* 70 NY2d 610; *see also, Matter of Counties of Warren & Wash. Indus. Dev. Agency v Village of Hudson Falls Bd. of Health,* — AD2d — [decided herewith]).

For our present purposes it is necessary to know that in 1988, after various environmental reviews had been completed, Essex County, 1 of the 3 counties, along with Warren and Washington Counties, from which refuse and solid waste were to be transported for incineration at the facility and in whose landfill wastes from the facility were to be deposited, withdrew from the project. Another landfill for waste products from the project was identified in Erie County, and in October 1988 the Warren and Washington Counties' Boards of Supervisors approved this modification along with resolutions finding that Essex County's withdrawal from the project and the change in the landfill site did not significantly change the environmental effects identified earlier in the final environmental impact statement and the final supplemental environ-

mental impact statement. In December 1988, the Counties of Warren and Washington Industrial Development Agency (hereinafter Agency) conducted a hearing on the issuance of bonds to finance the project pursuant to the Internal Revenue Code and approval by Warren and Washington Counties and the Agency followed.

Thereafter, these two cases were commenced. Case No. 1, commenced by citizens' groups and individuals opposed to the incinerator facility, seeks a judgment declaring that Warren and Washington Counties' approval of the new landfill site is void for failing to follow regulations under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) and that the public hearing held by the Agency before approving issuance of the bonds was conducted improperly. Case No. 2 is a combined CPLR article 78 proceeding and declaratory judgment action seeking essentially similar relief. Supreme Court granted motions for summary judgment dismissing both the complaint and petition, causing plaintiffs and petitioner to appeal. Petitioner also appeals from orders denying motions for a preliminary injunction and various discovery in case No. 2.

■ Initially, we find that petitioner has no standing in case No. 2 so that summary judgment properly was awarded dismissing the matter. To establish standing to contest administrative action, a petitioner must show, *inter alia,* an injury "different in kind and degree from the community generally" *(Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,* 69 NY2d 406, 413). In SEQRA challenges, as here, this injury cannot be solely economic but must be environmental *(see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,* 76 NY2d 428, 433). In case No. 2, petitioner has not identified any noneconomic, environmental damage resulting from the project affecting only him rather than the general population. Moreover, we find insufficient claims to support a cause of action pursuant to General Municipal Law § 51 by petitioner in case No. 2. Taxpayer actions under General Municipal Law § 51 are available only to prevent fraud or certain illegal acts involving wasting public property *(see, Matter of Korn v Gulotta,* 72 NY2d 363, 371-372; *Mesivta of Forest Hills Inst. v City of New York,* 58 NY2d 1014, 1016; *Cooper v Wertime,* 164 AD2d 221). In the absence of sufficient claims, the taxpayer action cannot be maintained. With these facts prevailing, we conclude that petitioner has no standing in case No. 2 so that summary judgment dismissing his petition was properly

granted. This makes it unnecessary for us to address the issues raised by petitioner in case No. 2 concerning denial of his requests for a preliminary injunction and various discovery.

Turning to the merits as raised in case No. 1, the parties dispute how to characterize the 1988 approvals following the modifications in the project. Plaintiffs argue that the modifications constituted a new action for which a new review of environmental effects as contemplated by SEQRA was required but not undertaken. Defendants counter that the 1988 approvals of the modifications merely were part and parcel of the ongoing project development which commenced in 1984 and included the prior environmental reviews so that new SEQRA review was not mandated. In *Matter of Jackson v New York State Urban Dev. Corp.* (67 NY2d 400), the Court of Appeals discussed the procedure to be followed where modifications in a project are made after issuance of a final environmental impact statement *(supra,* at 428-430). The Court of Appeals made clear that the agency is to determine a modification's significance after taking a "hard look" *(supra,* at 430). Here, where the final environmental impact statement not only has been issued but filed, we see no reason to impose any greater burden on an agency than that delineated by the Court of Appeals in *Matter of Jackson.** Accordingly, we must determine whether defendants took the required "hard look" and, if so, whether their assessment following the "hard look" is rational and supported by substantial evidence *(see, supra,* at 417, 430; *see also, Matter of Schultz v Jorling,* 164 AD2d 252; *Lazard Realty v New York State Urban Dev. Corp.,* 142 Misc 2d 463, 472).

The record reveals that after Essex County's withdrawal from the project, numerous meetings were held and reports and analyses were made. This work addressed the changes engendered by the modifications. The counties' Boards of Supervisors adopted findings statements as part of their October 1988 resolutions and a supplemental environmental assessment was circulated prior to the December 1988 approvals. This seems to us precisely the kind of "hard look" at the environmental effects of a modification contemplated by the Court of Appeals in *Matter of Jackson v New York State*

* Indeed, an argument could be made that following filing of the final environmental impact statement, fewer procedures are warranted *(cf., Matter of Village of Hudson Falls v New York State Dept. of Envtl. Conservation,* 158 AD2d 24, *supra),* but we need not resolve that question today.

*Urban Dev. Corp. (supra,* at 429). That defendants did not utilize an environmental assessment form is not fatal to the "hard look" procedure used since that form is required only for an initial review *(see,* 6 NYCRR 617.5), which is not involved here. That some members of the Boards of Supervisors may not have reviewed the supplemental environmental assessment does not invalidate the "hard look" because it is clear that the pertinent information was available and we should not assess the mental processes of those constituting an administrative tribunal *(see, Matter of Taub v Pirnie,* 3 NY2d 188, 193-194).

■ Having concluded that defendants took the requisite "hard look", it remains to decide whether the determination of no environmental significance from the project modifications is rational and supported by substantial evidence. It appears from the record that many of the effects caused by Essex County's withdrawal from the project are economic, rather than environmental. For example, increased fees and expenses resulting from Essex County's withdrawal are economic in nature and should not be confused with matters having an environmental impact *(see, Matter of Dreves v New York Power Auth.,* 131 AD2d 182, 186, *lv dismissed* 71 NY2d 889). It further appears reasonable that Essex County's withdrawal from the project would decrease amounts of solid waste for the project, which can only translate into fewer environmental effects. Plaintiffs' attempts to impose new State and Federal laws and regulations on the "hard look" process is without merit since these provisions are either inapplicable or fail to raise significant adverse environmental concerns. In the face of substantial evidence supporting defendants' determinations, summary judgment on these issues was properly awarded to defendants.

■ We further find no merit to plaintiffs' claim that the December 1988 approval of the issuance of the bonds by the Agency was void because of insufficient public hearings. The Agency had authority to set reasonable ground rules on the public hearing *(see,* 26 CFR 5f.103-2 [g] [2]). That some people were unable to speak at the hearing does not alter the fact that the Agency was well aware of the prevailing sentiment against the project of those in attendance. Indeed, those present at the meeting had raised significant concerns about and opposition to the project for several years. Under these circumstances, we see no reason to invalidate the Agency's approval because of how the public hearing was conducted.

We have considered the other arguments raised by plaintiffs and find them without merit.

■ Despite our agreement with Supreme Court's resolution of the substantive issues, it is apparent that the order granting summary judgment to defendants and dismissing the complaint in case No. 1 must be modified. Since this case seeks a declaratory judgment, the proper resolution is to grant a declaration in defendants' favor *(see, Maurizzio v Lumbermens Mut. Cas. Co.,* 73 NY2d 951, 954) and we modify accordingly.

WEISS, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order entered July 31, 1990 modified, on the law, without costs, by reversing so much thereof as dismissed the complaint in case No. 1; it is declared that the approvals given by defendants at meetings held October 28, 1988 and December 12 and 16, 1988 are not null and void; and, as so modified, affirmed.

Appeals from orders entered August 21, 1989, November 15, 1989 and February 1, 1990 dismissed, as academic, without costs.